UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CRAIG V. REYNOLDSON,<br><br>                    Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | CASE NO. 21-cv-1041-LK<br><br>ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

  Plaintiff Craig Reynoldson seeks review of the denial of his applications for supplemental security income and disability insurance benefits. He contends the ALJ erred by rejecting (1) his testimony, (2) lay witness statements, and (3) several doctors' medical opinions. Dkt. No. 9. Because the ALJ committed non-harmless error in his rejection of Reynoldson's testimony and his evaluation of several doctors' medical opinions, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

I.      BACKGROUND

Reynoldson is 48 years old, has at least a high school education, and has worked as a heavy equipment operator and pipe loader. Admin. Record ("AR") (Dkt. No. 7) 26. He applied for disability insurance benefits in November 2018, and for supplemental security income benefits in October 2019. AR 15, 163–64. In both applications, he alleged disability as of May 21, 2016. AR 15. His applications were denied initially and on reconsideration. AR 68–96. At Reynoldson's request, ALJ Glenn Meyers held a hearing on November 10, 2020. AR 33–67. On December 9, 2020, ALJ Meyers issued a decision finding Reynoldson not disabled. AR 15–27.

Utilizing the five-step disability evaluation process, 20 C.F.R. §§ 404.1520, 416.920,[1] the ALJ found as follows:

**Step one:** Reynoldson has not engaged in substantial gainful activity since May 21, 2016, the alleged onset date.

**Step two:** Reynoldson has the following severe impairments: anxiety disorder, schizophrenia spectrum disorder, and substance addiction disorder, in remission.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment. 20 C.F.R. Part 404, Subpart P, App'x. 1.

**Residual Functional Capacity:** Reynoldson can perform the full range of work at all exertional levels but with non-exertional limitations. He can perform unskilled, repetitive, routine tasks in two-hour increments, can have occasional contact with supervisors, and can work in proximity to, but not in coordination with, coworkers. He cannot have contact with the public.

**Step four:** Reynoldson cannot perform past relevant work.

**Step five:** Because there are jobs that exist in significant numbers in the national economy that Reynoldson can perform, he is not disabled.

AR 17–27. The Appeals Council denied Reynoldson's request for review, making the ALJ's decision the Commissioner's final decision. AR 1–3.

---

[1] "The recent changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process.'" *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022).

## II. DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). When the evidence is susceptible to more than one rational interpretation, an ALJ's rational interpretation must be upheld. *Id.* at 1115–16. This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### A. The ALJ Erred in Rejecting Reynoldson's Testimony

Reynoldson argues that the ALJ erred by failing to give clear and convincing reasons for rejecting his testimony regarding the severity of his symptoms. Dkt. No. 9 at 2–5. Reynoldson testified he is afraid of being around other people. AR 45–46. He testified he would be nervous about doing a job because "[t]hey might put something in my food." AR 53. Reynoldson reported he cannot focus due to paranoia. AR 210. He reported he has difficulty talking, remembering, concentrating, understanding, and following instructions. AR 215.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject

the claimant's testimony "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet[.]" *Id.* (quoting *Garrison*, 759 F.3d at 1014–15).

The ALJ found that Reynoldson met the first step, but discounted his testimony regarding the severity of his symptoms. AR 20–23. The ALJ reasoned that Reynoldson's testimony was "not entirely consistent" with the overall medical evidence, which the ALJ determined showed significant improvement by the end of 2016. AR 20–25. The ALJ also found that Reynoldson made inconsistent statements, undermining the reliability of his testimony. AR 23. Neither reason withstands scrutiny.

The ALJ erred in rejecting Reynoldson's testimony based on the finding that he significantly improved with treatment. "Reports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms" as well as "an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017 (internal quotation marks and citations omitted). Reynoldson at times reported his schizophrenia was stable on medications, but continued to present with abnormal findings, such as paranoia and delusions, throughout the alleged disability period. *See, e.g.*, AR 623–24 (November 23, 2016); 621 (January 6, 2017); 613–14 (February 17, 2017); 607 (May 12, 2017); 714 (November 30, 2017); 670, 676 (March 26, 2018; noting that Reynoldson rates his anxiety "8/10" and reports that "people are after me"; observing that "delusions persist" and he is "paranoid & anxious as a result"); 703 (May 31, 2018); 701–02 (June 28, 2018; "he is afraid that someone is watching him and following him when he goes out"; "[d]ifficulty leaving the house due to continuing feeling of being followed"); 750–53 (October 17, 2019; "Mr. Reynoldson struggles to leave the house, [let alone] function"; "Paranoia is consistently present and impacts daily functioning"); 787 (July 17, 2020). The ALJ's rationale falls far short of

clear and convincing. His finding that the medical evidence showed such significant improvement as to contradict Reynoldson's testimony was not supported by substantial evidence, and this deficient reasoning permeates his other errors. *See infra* Section II.B.

The ALJ also erred in rejecting Reynoldson's testimony based on a finding that he made inconsistent statements. The ALJ pointed to three statements Reynoldson made about when he graduated from high school. When Reynoldson was hospitalized due to paranoia and suicidal ideation in August 2016, he told a provider that he "met developmental milestones on time, and graduated from high school with his cohort." AR 573–74. In October 2019, he reported to a psychological examiner that he dropped out of school in 11th grade, but "later returned and got his high school diploma at 24." AR 749. And in March 2020, Reynoldson reported to a different psychological examiner that he "dropped out of high school in 1992 but returned to complete it in 2002 and he was successful in obtaining a diploma." AR 769. These statements are only marginally inconsistent, and are wholly irrelevant to Reynoldson's reports of the severity of his symptoms. Any inconsistency in these statements does not provide a clear and convincing reason to reject Reynoldson's testimony. *See Hostrawser v. Astrue*, 364 F. App'x 373, 377 (9th Cir. 2010) (ALJ's discrediting of claimant's testimony due to his faulty income reporting was insufficient because the faulty reporting was "just one discrepancy in his testimony and one that [wa]s unrelated to the medical symptoms and physical limitations at issue in th[e] case," whereas "[t]he rest of the record show[ed] a genuine medical and physical problem"); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. . . . [O]ur adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.").

The ALJ erred by failing to provide valid reasons for rejecting Reynoldson's testimony.

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 5

**B.     The ALJ Erred in Evaluating the Medical Opinion Evidence**

Reynoldson argues that the ALJ erred by rejecting the opinions of treating psychiatrist Catalina Draghici, M.D., examining psychologist Morgan McCormick, Psy.D., examining psychologist Nikki Johnson, Psy.D., and reviewing psychologist Luci Carstens, Ph.D. Dkt. No. 9 at 6–8. The Commissioner asserts that new regulations promulgated in 2017 change the standard by which the ALJ's reasons for rejecting medical providers' opinions are measured. Dkt. No. 12 at 7–9. It contends that the ALJ provided "appropriate rationales, consistent with those regulations." *Id.* at 9. The Court disagrees.

In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). ALJs must nonetheless explain with specificity how they considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). As the Ninth Circuit recently determined, although the new regulations displace its "longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion," the ALJ's decision—including the decision to discredit any medical opinion—must still be supported by substantial evidence. *Woods*, 32 F.4th at 787. Thus, ALJs "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. ALJs "must 'articulate . . . how persuasive' [they] find[] 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [they] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Id.*;

*see also id.* at 793 n.4 ("[T]o avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported' with precision.").

In rejecting all four medical opinions that found that Reynoldson had marked or severe limitations, the ALJ relies on his finding that Reynoldson's "condition had significantly improved by the end of 2016." AR 20–25. But that finding is not supported by substantial evidence. Instead, it "improperly cherry-pick[s] some . . . characterizations of [Reynoldson's] rapport and demeanor instead of considering these factors in the context of" the entire record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *compare* AR 21–23, *with* AR 623–24 (November 23, 2016); 621 (January 6, 2017); 613–14 (February 17, 2017); 607 (May 12, 2017); 714 (November 30, 2017); 670, 676 (March 26, 2018; noting that Reynoldson rates his anxiety "8/10" and reports that "people are after me"; observing that "delusions persist" and he is "paranoid & anxious as a result"); 703 (May 31, 2018); 701–02 (June 28, 2018; "he is afraid that someone is watching him and following him when he goes out"; "[d]ifficulty leaving the house due to continuing feeling of being followed"); 750–53 (October 17, 2019; "Mr. Reynoldson struggles to leave the house, [let alone] function"; "Paranoia is consistently present and impacts daily functioning"); 787 (July 17, 2020). As the Ninth Circuit has emphasized, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017.

1. The ALJ Erred in Rejecting Dr. Draghici's Opinions

Dr. Draghici was one of Reynoldson's treating doctors. *See* AR 816–33. In September 2020, Dr. Draghici completed a mental residual functional capacity assessment. AR 774–77. She opined that Reynoldson had marked limitations in understanding and memory, mostly marked limitations in sustained concentration and persistence, extreme limitations in social interaction, and extreme limitations in adaptation. AR 775–77. She noted that Reynoldson "hasn't been functioning for years. His focusing is poor, he isn't able to follow instructions closely, his

executive function is impaired." AR 777.

The ALJ rejected Dr. Draghici's opinions as (1) out of proportion with the medical record, which the ALJ concluded showed evidence of significant improvement, (2) inconsistent with Dr. Draghici's own findings, and (3) too heavily reliant on Reynoldson's self-reports, which the ALJ rejected as unreliable. AR 24–25. These reasons all fail for largely the same reasons the ALJ's rejection of Reynoldson's testimony fails.

The ALJ first erred in rejecting Dr. Draghici's opinions as out of proportion with evidence of significant improvement. As discussed above, the ALJ's finding that Reynoldson significantly improved was not supported by substantial evidence. The ALJ's determination that Dr. Draghici's opinions were inconsistent with such improvement is thus also not supported by substantial evidence.

The ALJ next erred in rejecting Dr. Draghici's opinions as inconsistent with her own medical findings. The ALJ noted several normal findings among Dr. Draghici's records, but failed to acknowledge her abnormal findings. For example, the ALJ noted that Reynoldson had logical and goal-directed thought processes at his intake appointment with Dr. Draghici. AR 25, 820. But the ALJ failed to note that at that same appointment, Reynoldson had a constricted affect and "reported no change in his psychotic symptoms for the last couple of months. Patient reported that he continues to feel that people are following him from time to time." AR 816, 820. The ALJ noted that at a later appointment, Reynoldson again had logical and goal-directed thought processes, with intact judgment and insight. AR 25, 829. But the ALJ failed to note that he presented with a depressed mood and blunted affect, and reported that his mood has been "more depressed" and "anxiety levels have been high." *Id.* at 829. At a minimum, the ALJ needed to explain why Dr. Draghici's normal findings outweighed the abnormal findings. The ALJ failed to do so, and thus erred. *See Garrison*, 759 F.3d at 1012–13; *Perez v. Saul*, 855 F. App'x 365, 366 (9th Cir. 2021)

(finding that the ALJ erred by "cherry-pick[ing] statements do not reflect the diagnostic record as a whole.").

The ALJ last erred in rejecting Dr. Draghici's opinions as too heavily reliant on Reynoldson's self-reports. As discussed above, the ALJ relied on faulty rationale in rejecting Reynoldson's testimony, and his determination that Dr. Draghici erred in relying on it is not supported by substantial evidence. *See supra* Part II.A.

The ALJ therefore failed to provide any valid reasons for rejecting Dr. Draghici's opinions.

2. The ALJ Erred in Rejecting Dr. McCormick's Opinions

Dr. McCormick examined Reynoldson in March 2020. AR 767–72. She completed a medical source statement and psychological evaluation. AR 763–72. Dr. McCormick opined that Reynoldson had marked limitations in a number of areas of mental functioning, including the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for two-hour periods, accept instructions and respond appropriately to criticism from supervisors, complete a workday without interruption from psychologically-based symptoms, and set realistic goals and plan independently. AR 765–66.

The ALJ rejected Dr. McCormick's opinions as out of proportion with the medical record's showing of significant improvement, and as too heavily reliant on Reynoldson's self-reports. AR 25. These reasons fail with respect to Dr. McCormick's opinions for the same reasons they fail with respect to Dr. Draghici's opinions. The ALJ thus failed to provide valid reasons for rejecting Dr. McCormick's opinions, and erred.

3. The ALJ Erred in Rejecting Dr. Johnson's and Dr. Carstens' Opinions

Dr. Johnson examined Reynoldson in October 2019. AR 748–59. Dr. Johnson opined that Reynoldson had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, maintain

appropriate workplace behavior, set realistic goals, and plan independently. AR 751. Dr. Johnson also opined that Reynoldson was severely limited in his ability to complete a normal workday or workweek without interruptions from his symptoms. *Id.*

Dr. Carstens reviewed Dr. Johnson's report for the Washington Department of Social and Health Services. AR 761–62. Dr. Carstens concurred with Dr. Johnson's opinions, except that she recommended a 24-month "RME [Recovery Management Entity] referral" rather than 18 months "based on the severity of the evaluator's ratings on the Functional Limitation Scale." *Id.*

The ALJ rejected Dr. Johnson's opinions because she "did not have an opportunity to review the updated record," her opinions were out of proportion with her own findings and with evidence of significant improvement, and she relied too heavily on Reynoldson's self-reports. AR 23–24.

The ALJ rejected Dr. Carstens' opinions because they were out of proportion with evidence of significant improvement, and "somewhat out of proportion with" Dr. Johnson's observations and findings. AR 24.

The ALJ erred in rejecting Dr. Johnson's opinions based on her having not reviewed the entire record. The two doctors' opinions that the ALJ found persuasive—Wolfe and Kraft—also did not review the updated record. AR 23. The ALJ fails to explain what parts of the record Dr. Johnson did not review or how her failure to review the updated record affects the supportability and consistency of her opinions, especially considering the record overall. To the extent the ALJ intended to refer to the parts of the record that showed "significant improvement," he erred in making that finding of improvement, as discussed above. The ALJ's reasoning as to Dr. Johnson's review of the record lacks substantial evidentiary support.

Along the same lines, the ALJ erred in rejecting Dr. Johnson's opinions—and Dr. Carstens' concurring opinions—as out of proportion with evidence of significant improvement. Again, the

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 10

finding of significant improvement was not supported by substantial evidence.

The ALJ further erred in rejecting Dr. Johnson's and Dr. Carstens' opinions as out of proportion with Dr. Johnson's own findings. Much like his evaluation of Dr. Draghici's opinions, the ALJ noted normal findings from Dr. Johnson, but failed to address a number of abnormal findings. For example, the ALJ noted that Reynoldson was "polite and cooperative overall," AR 24, but failed to acknowledge that Reynoldson "sometimes struggled with deciphering what informative [sic] may be relevant to disclose," or that "[p]aranoia is consistently present and impacts daily functioning," AR 753. *See also id.* ("For example, Mr. Reynoldson can drive but struggles to do so because he believes people are following him."); *id.* at 751 ("Mr. Reynoldson struggles to leave the house, [let alone] function"). The ALJ's analysis of Dr. Johnson's report did not paint an accurate picture of her findings. The ALJ also determined that Dr. Johnson's opinion that Reynoldson "has marked or severe limitations as to his ability to perform work activities" was "out of proportion to her own findings and observations that while the claimant was timid, he was polite and cooperative overall with a normal memory and concentration on formal mental status testing." AR 24. But it is not clear how Johnson's observations of Reynoldson's abilities in the clinical setting necessarily contradicts her conclusion that he had marked or severe limitations that would inhibit his functioning in a workplace setting. *See Caldwell v. Saul*, 840 F. App'x 907, 910 (9th Cir. 2020) ("[i]t is not clear how an ability to sometimes interact with others appropriately contradicts an opinion that acknowledged that [claimant] behaved appropriately during his appointment but concluded that he would not be able to do so for work."). The ALJ therefore erred in rejecting Dr. Johnson's and Dr. Carstens' opinions as inconsistent with Dr. Johnson's own findings.

The ALJ last erred in rejecting Dr. Johnson's opinions as too heavily reliant on Reynoldson's self-reports. AR 24. Once again, the ALJ erred in rejecting Reynoldson's testimony

as unreliable, and thus erred in rejecting Dr. Johnson's reliance on Reynoldson's statements. *See supra* Part II.A.

In sum, the ALJ failed to articulate valid reasons to reject Dr. Johnson's and Dr. Carstens' opinions.

### C. The Court Need Not Determine Whether the ALJ Erred With Respect to the Lay Witness Statements

Reynoldson argues that the ALJ erred by failing to give germane reasons for rejecting lay witness statements in the record. Dkt. No. 9 at 5. Reynoldson's brother and mother each submitted written statements regarding Reynoldson's condition. AR 274, 277. Reynoldson's brother wrote that he observed Reynoldson with diminished dexterity, low energy, mumbled speech, distractibility, and nervousness, among other things. AR 274. Reynoldson's mother wrote that Reynoldson was fearful about the blinds being open because "people can look in," and observed that he was difficult to understand and socially isolated, among other things. AR 277.

The Commissioner contends that the new regulations do not require the ALJ to articulate how he considered evidence from nonmedical sources, and that even if the ALJ erred, the error was harmless. Dkt. No. 12 at 13–14.

As the Ninth Circuit recently noted, "[i]t is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions." *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022). Because the Court finds that the ALJ committed error that was not harmless in rejecting Reynoldson's testimony and in evaluating the medical opinion evidence, it need not determine whether the ALJ erred with respect to the lay witness statements.

D.  **The ALJ's Errors Were Not Harmless**

"The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (cleaned up). But the Court "cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (cleaned up).

The Court cannot confidently conclude that the ALJ's multiple, material errors with respect to discrediting Reynoldson's testimony and substantial parts of the medical record were harmless. Although the standard of review is deferential, the court "must consider the entire record as a whole" and may not affirm where the ALJ has merely "pick[ed] out a few isolated instances of improvement over a period of months or years" amid "[c]ycles of improvement and debilitating symptoms" to support the denial of benefits. *Garrison*, 759 F.3d at 1009, 1017 (cleaned up). Here, the ALJ's "descriptions of unremarkable status examinations did not take into account the record as a whole, and [this Court] cannot affirm based only on the selective evidence that supports the Commissioner." *Caldwell*, 840 F. App'x at 910. Furthermore, the ALJ's rejection of Reynoldson's testimony was insufficiently supported. These errors negate the validity of the ALJ's ultimate conclusion because they "infected the ALJ's residual functional capacity assessment," and were therefore not harmless. *Ghanim*, 763 F.3d at 1166.

E.  **Scope of Remand**

Reynoldson cursorily asks the Court to remand this matter for an award of benefits. Dkt. No. 9 at 8. Except in rare circumstances, the appropriate remedy for an erroneous denial of benefits is remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014)). Reynoldson

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 13

has not analyzed the factors the Court considers before remanding for an award of benefits, nor shown any rare circumstances. The Court will remand for further administrative proceedings.

On remand, the ALJ shall reevaluate Reynoldson's testimony and the medical opinions of Dr. Draghici, Dr. McCormick, Dr. Johnson, and Dr. Carstens. The ALJ shall reevaluate Reynoldson's residual functional capacity, and reassess all relevant steps of the disability evaluation process. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this Order.

### III.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 9th day of January, 2023.

Lauren King
United States District Judge